USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/22/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

IN RE PRINCIPAL U.S. PROPERTY      Master File No. 09 Civ. 9889 (CM)
ACCOUNT LITIGATION

---------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER GRANTING THE MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF IOWA

McMahon, J.:

Before the Court is a motion by the four Principal defendants (collectively, "Defendants" or "Principal") to transfer venue from the Southern District of New York to the Southern District of Iowa.

The motion is GRANTED. In view of the foregoing, the transferee court will consider the parties' proposed scheduling order.

### The Lawsuits

The Principal U.S. Separate Property Account (the "Property Account" or "Account") is an open-ended, commingled, separate account fund managed by Principal that invested primarily in real estate holdings. The Property Account was offered to Employee Retirement Income Security Act ("ERISA") plan participants as an investment option in the participants' individual account plans. Principal offered the Property Account to retirement plans located throughout the country – including the Southern District of New York – as a "low risk" retirement savings option with a "strong focus on liquidity."

Principal represented that the Property Account would provide stable returns and maintain enough liquidity that retirement funds in the Account would be accessible when needed. Principal served as the ERISA investment manager for the Property Account, and was obligated by ERISA to manage the Account according to ERISA's strict fiduciary duties.

Plaintiffs allege that Defendants breached their fiduciary duties under ERISA by managing the retirement assets in the Property Account inconsistently with the Account's stated objectives. They contend that Principal maintained insufficient liquidity in the Property Account to meet the withdrawal requests of the ERISA plans and plan participants. The Property Account allegedly became high risk as a result of having insufficient liquidity – which was undoubtedly caused by the worldwide decline in real estate prices that began in 2007.

On September 26, 2008, Principal imposed a withdrawal freeze by closing the Property Account to withdrawals, thereby "locking up" participants' retirement savings in the Account. Principal has instituted what it calls a "withdrawal queue," promising to honor withdrawal

requests in the event sufficient liquidity should become available (which presumably would occur only if the real estate market bounded back to its former inflated levels).

Plaintiffs allege that the failure to maintain adequate liquidity caused substantial losses to the ERISA plans and plan participants who were invested in the Account by preventing the investors from withdrawing their money while the value of the Account – and of their funds in the Account – declined along with the value of the real estate underlying their investments. Plaintiffs allege that the value of a share in the Property Account declined from $704.32 on September 26, 2008 (the date withdrawals were frozen and the queue imposed) to $443.98 on November 30, 2009 (the date the lawsuit was filed).

Plaintiffs seek relief pursuant to ERISA §§ 409 and 502(a)(2), as well as equitable relief and the imposition of a constructive trust from Principal pursuant to ERISA § 502(a)(3).

**The Parties**

Four separate actions involving these allegations were filed in the Southern District of New York and consolidated before me.

Plaintiff Dennis Mullaney resides in Whitestone, New York (located in the Eastern District of New York).

Plaintiff Eric Cruise resides in Poland, New York (located in the Western District of New York).

Plaintiff Jaime Jover resides in Nevada.

Plaintiff Francisco Carpio resides in Kansas.

Defendant Principal Financial Group, Inc. ("PFG") is incorporated in Delaware and maintains its principal place of business in Des Moines, Iowa. PFG and/or certain of its subsidiaries have offices at several locations in Manhattan, including 75 Rockefeller Plaza, 1155 Avenue of the Americas, and 888 Seventh Avenue.

Defendant Principal Life Insurance Company ("Principal Life") is incorporated in Iowa and maintains its principal place of business in Des Moines, Iowa. It provides services and products (including, inter alia, the Property Account) to retirement plans through its Retirement & Investment Services business unit. Principal Life has numerous offices and a substantial presence in the Southern District of New York.

Defendant Principal Global Investors, LLC ("PGI") is incorporated in Delaware, with its principal place of business in Des Moines, Iowa. There is no competent evidence that its principal place of business is at 888 Seventh Avenue; information posted on the website of an architect concerning the location of PGI's headquarters is hardly persuasive rebuttal to the sworn testimony of corporate officers. According to the website of PFG, PGI "is the asset management arm of the Principal Financial Group (The Principal) and includes the asset management

operations of the following subsidiaries of The Principal: [Defendant] Principal Global Investors, LLC; [Defendant] Principal Real Estate Investors LLC; [and others not party to this action]."

Defendant Principal Real Estate Investors, LLC ("PrinREI") is a registered investment advisor. It is incorporated in Delaware, with its principal place of business in Des Moines, Iowa. Personnel of PrinREI serve as portfolio managers with day-to-day responsibility for investment decisions regarding the Account's real estate assets. These services are performed in Des Moines.

**The Motion**

Defendants have moved to transfer this case to the Southern District of Iowa pursuant to 28 U.S.C. § 1404.

The parties agree that jurisdiction would attach in both courts and that venue lies in both courts.

The matter of transfer is remitted to the court's sound discretion. Defendants bear the burden to establish that the forum should change, Factors Etc. Inc., v. Pro Arts, Inc., 579 F. 2d 215, 218 (2d Cir. 1978), and their burden is not light, Wine Mkts. Int'l v. Bass, 939 F. Supp. 178, 185 (E.D.N.Y. 1996).

The motion will be decided using the well-known nine-factor test employed in this Circuit (although a number of the factors are related, so the Court compresses them rather than engaging in a lot of redundancy).

*Plaintiffs' Choice of Forum*

Ordinarily, a plaintiff's choice of forum should be given great weight, and should not be casually disturbed. See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006). Less deference is owed to a plaintiff's choice of forum when the plaintiff does not reside in the forum district and the cause of action did not arise in the chosen forum, and where that district has little connection to the circumstances at issue. See Quan v. Computer Sciences Corp., Nos. 06 Civ. 3927, 06 Civ. 5100, 2008 WL 89679, at *3 (E.D.N.Y. Jan. 7, 2008); Bd. of Trustees v. Sullivant Ave. Props., LLC, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007).

Also, a class plaintiff's choice of forum is entitled to less weight than is the choice of a plaintiff who is pursuing relief on his or her own claim only. Quan, 2008 WL 89679, at *3. However, ERISA plaintiffs are entitled to heightened deference for their choice of a venue in which to pursue their claims, Int'l Painter & Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc., 357 F. Supp. 2d 54, 56 (D.D.C. 2004), and I agree with the courts that have concluded that this heightened deference offsets the lesser deference ordinarily afforded to a class plaintiff, see, e.g., Jackson v. Morgan Asset Mgmt., Inc., No. 08 Civ. 2231, slip op. at 10 (W.D. Tenn. Aug. 11, 2008), especially since, in the ordinary course, "There is no reason to believe that [a plaintiff] class would have preferred that the suit [on its behalf] be brought in

operations of the following subsidiaries of The Principal: [Defendant] Principal Global Investors, LLC; [Defendant] Principal Real Estate Investors LLC; [and others not party to this action]."

Defendant Principal Real Estate Investors, LLC ("PrinREI") is a registered investment advisor. It is incorporated in Delaware, with its principal place of business in Des Moines, Iowa. Personnel of PrinREI serve as portfolio managers with day-to-day responsibility for investment decisions regarding the Account's real estate assets. These services are performed in Des Moines.

**The Motion**

Defendants have moved to transfer this case to the Southern District of Iowa pursuant to 28 U.S.C. § 1404.

The parties agree that jurisdiction would attach in both courts and that venue lies in both courts.

The matter of transfer is remitted to the court's sound discretion. Defendants bear the burden to establish that the forum should change, Factors Etc. Inc., v. Pro Arts, Inc., 579 F. 2d 215, 218 (2d Cir. 1978), and their burden is not light, Wine Mkts. Int'l v. Bass, 939 F. Supp. 178, 185 (E.D.N.Y. 1996).

The motion will be decided using the well-known nine-factor test employed in this Circuit (although a number of the factors are related, so the Court compresses them rather than engaging in a lot of redundancy).

*Plaintiffs' Choice of Forum*

Ordinarily, a plaintiff's choice of forum should be given great weight, and should not be casually disturbed. See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006). Less deference is owed to a plaintiff's choice of forum when the plaintiff does not reside in the forum district and the cause of action did not arise in the chosen forum, and where that district has little connection to the circumstances at issue. See Quan v. Computer Sciences Corp., Nos. 06 Civ. 3927, 06 Civ. 5100, 2008 WL 89679, at *3 (E.D.N.Y. Jan. 7, 2008); Bd. of Trustees v. Sullivant Ave. Props., LLC, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007).

Also, a class plaintiff's choice of forum is entitled to less weight than is the choice of a plaintiff who is pursuing relief on his or her own claim only. Quan, 2008 WL 89679, at *3. However, ERISA plaintiffs are entitled to heightened deference for their choice of a venue in which to pursue their claims, Int'l Painter & Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc., 357 F. Supp. 2d 54, 56 (D.D.C. 2004), and I agree with the courts that have concluded that this heightened deference offsets the lesser deference ordinarily afforded to a class plaintiff, see, e.g., Jackson v. Morgan Asset Mgmt., Inc., No. 08 Civ. 2231, slip op. at 10 (W.D. Tenn. Aug. 11, 2008), especially since, in the ordinary course, "There is no reason to believe that [a plaintiff] class would have preferred that the suit [on its behalf] be brought in

[another court and Circuit], rather than in New York," Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 344 (S.D.N.Y. 2002).

Defendants assert that the additional deference ordinarily accorded to an ERISA plaintiff's choice of forum should be overlooked because this case has no connection to the Southern District of New York aside from its being the place where some of Plaintiffs' counsel have their offices. See Marton v. Chase Manhattan Bank, N.A., No. 96 Civ. 697, 1998 U.S. Dist. LEXIS 22865, at *9, 15 (D. Conn. Mar. 12, 1998); Pepsico, Inc., v. Bd. of Trustees of the W. Conf. of Teamsters Pension Trust Fund, No. 87 Civ. 3968, 1988 WL 64869, at *3 (S.D.N.Y. June 13, 1988).

It is impossible to conclude that this action lacks *any* connection to the Southern District of New York. Even accepting Defendants' testimony that much of the activity relating to the Account was carried out in Des Moines, it is undisputed that New York City (specifically Manhattan, which is located in the Southern District of New York) is a substantial locus of the Principal Defendants' business activity. James McCaughan, who is the President and Chief Executive Officer of PGI and the President of Principal Global Asset Management, as well as a member of Principal's Investment and Queue Committees, spends well over 50% of his time at those entities' New York City offices. (See Decl. of Teri Button in Supp. of Defs.' Mot. to Transfer Venue to S.D. Iowa, Feb. 19, 2010, Tab 1.) The Court would be very surprised to learn that absolutely none of the investment activities relating to the Account took place in Manhattan, or that McCaughan never did any work relating to the Account during his extensive time working in New York. Furthermore, Defendants admit that qualified pension plans located and/or managed out of the Southern District of New York may, through representatives located primarily in the Southern District of New York, apply to enter into group annuity contracts that permit investment in the Account. (See Supplemental Decl. of Teri Button, ¶ 7.) While the actual contracts issue from Iowa and are administered in Iowa (and I have no reason to disbelieve any of the testimony so demonstrating), it is apparent that sales activity directed to these plans takes place in the Southern District of New York. Indeed, any other conclusion is utterly illogical. All of the above constitutes "meaningful activity" relating to the subject matter of this action.

I thus cannot conclude, as Defendants wish, that this District lacks *any* meaningful connection to the claims here in issue, and I will afford substantial deference to Plaintiffs' choice of forum.

*Convenience of Parties / Convenience of Witnesses / Availability of Process*

These three factors are far and away the most important to any transfer analysis, and they are so closely related that the Court considers them together.

None of the named Plaintiffs lives in the Southern District of New York, but two live in New York State, and one lives in New York City, in an area that is located in the Eastern District but equally accessible (perhaps moreso, by public transportation) to the courthouse in which I sit. Two named Plaintiffs live west of the Mississippi River.

4

Nearly all of Defendants' witnesses, both party and non-party, live and work in Iowa – including the witnesses who manage the Account and the Queue that was set up when the real estate market crashed and the Account became illiquid.

As Plaintiffs point out, Principal has engaged in litigation in New York, including in the Southern District of New York, without making any motion to transfer the cases to Iowa. Among these actions are class actions involving allegations raising claims under ERISA. I consider this information, not to support an irrelevant "minimum contacts" argument (no such argument is made), but rather as evidence that Principal would not find it as inconvenient to litigate an ERISA class action here as its motion papers suggest.

The Court has reviewed two of the complaints cited in Plaintiffs' brief – the ones most recently filed in this court (Earlier actions are not electronically filed, and I did not ask the Clerk of the Court to go into closed files so that I could examine pleadings in cases long since closed.) The two complaints I have read do not suggest that Principal goes out of its way to litigate in New York and so shed little light on the issue before the Court – which is where it would be most convenient to litigate claims relating to the Property Account.

One of the cases I examined, Oviatte v. Principal Financial Group, Inc., 10 Civ. 488, involves a denial of benefits claim brought by an individual policy holder against an insurer. The plaintiff is an individual, a resident of New York, who originally sued in the New York State Supreme Court; Principal removed the case to this court. As the plaintiff is prosecuting his own personal claim and is a New York resident, it is highly unlikely that Principal would have succeeded in transferring the case to Iowa by making the type of motion it makes here; Iowa which likely be a highly inconvenient forum for an individual plaintiff. Therefore, I cannot read too much into Principal's decision not to seek a transfer in that case.

The second action, Grund v. Principal Financial Group, Inc., No. 09 Civ. 08025, is a class action brought on behalf of a class of Principal IRA account holders. The complaint alleges breach of fiduciary duty because of a particular investment that turned out to be a Ponzi scheme. The investment does not appear to have had anything to do with real estate or with the Account; for all the Court knows, the investment was made by someone working for a different division of Principal and located in New York. In any event, Principal's participation in this action, and in other actions in this District over the past decade – while not "completely irrelevant," as Defendants contend – is hardly dispositive of the convenience question.

I have little doubt that Principal could readily handle litigation in the Southern District of New York. It has substantial resources witnesses. It witnesses can be deposed in Iowa without disrupting their work and personal lives. It can also compel its employees to come to New York for trial, and it probably could persuade its outside accountants to do so as a business accommodation. It has a substantial physical presence in Manhattan, so it would doubtless have a place for its lawyers to work with witnesses. And at least one key witness, Mr. McCaughan, can be found in New York much of the time.

However, it would unquestionably be more convenient for the Iowa witnesses (and this seems to be most of the witnesses who have thus far been identified) to appear and testify in

Iowa. The non-party witnesses who are located in Iowa and Texas cannot be compelled to testify live at a trial in New York; many of them, however, appear to be subject to process in Iowa and could testify live at a trial in that state. Other than Mr. McCaughan, plaintiffs have not identified a single witness involved with the *management* of the Account who lives or works in or near New York City. As Defendants point out, the case does not turn on information relating to the marketing of the Account (some of which occurred in this District). Only one of the named Plaintiffs lives here (albeit across the river), and he has little relevant information to provide to the Court. Data supplied to the Court reveal that fewer than 1% of the members of the putative class live in the Southern District of New York.

These factors strongly favor Iowa over the Southern District of New York.

*Locus of Operative Facts*

The locus of operative facts is traditionally an important consideration in the transfer analysis. While activities relevant to this case undoubtedly occurred in New York City, the evidence before the Court establishes that the locus of operative facts is Des Moines, Iowa. It is there that decisions regarding the ongoing management of the Account's assets before and after the disruption of the credit markets, the management of its liquidity levels, the communication of withdrawal restrictions, and the implementation and operation of the queue, all took place. The individuals, committees and teams responsible for these matters consistently met, deliberated and made decisions in Des Moines – and never in Manhattan. This factor strongly favors transfer as well.

*Location of Relevant Evidence*

This factor has virtually no relevance in the electronic documents era. It is true that the Information Technology staff of Defendants is located in Des Moines, but that is of no moment; they can prepare the documents for electronic transmission to New York from their home offices and the documents can be transmitted to and seen on computers in New York. There is absolutely no impact on the operations of the court or the progress of the litigation from the location of the evidence.

*Relative Means of the Parties*

This factor is essentially irrelevant in the class action context, since counsel are financing the case on behalf of Plaintiffs, whose modest means relative to those of Defendants are of absolutely no moment. This factor is also neutral.

*Familiarity with Governing Law*

All federal judges are presumed equally familiar with most federal law, and every federal judge deals with ERISA in multiple contexts. I thus cannot and will not presume that my colleagues in Des Moines know much less about ERISA -- most particularly about the fascinating question of whether it is even possible to maintain a class action of the sort here brought -- than I do. This factor is neutral.

6

*Trial Efficiency*

Statistics reveal that docket and calendar congestion is greater in the Southern District of New York than it is in the Southern District of Iowa. While this Court views this factor as of no more than marginal relevance, it favors transfer.

## The Balance

Even according Plaintiffs' choice of forum great weight – and I do – the fact that the convenience of the parties and witnesses (especially non-party witnesses thus far identified) and the locus of operative facts strongly favor transfer leads me to conclude that these cases should be transferred to the Southern District of Iowa, solely for the convenience of the parties and witnesses.

The motion to transfer is granted. The Clerk of the Court is directed to transmit the file to the Southern District of Iowa.

Dated: April 22, 2010

U.S.D.J.

BY ECF TO ALL COUNSEL